NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
LUCY B. JENNINGS (Cal. Bar No. 301977)
Assistant United States Attorney
International Narcotics,
Money Laundering, & Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5487
     Facsimile: (213) 894-0141
     E-mail:    lucy.jennnings@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 17-535-CAS - 1 |
|---|---|
| Plaintiff, | ORDER SETTING FORTH <u>FACTUAL FINDINGS PURSUANT TO</u>   <u>THE CARES ACT</u> |
| v. | |
| NANCY SOE, | |
| Defendant. | |

The Court, having read and considered the parties' stipulation regarding request for an order setting forth factual findings regarding the necessity of proceeding by video teleconference in this case, hereby issues the following factual findings:

(1)  On March 13, 2020, the President of the United States issued a proclamation declaring a National Emergency in response to the COVID-19 (Coronavirus Disease) pandemic.

(2)  The Governor of the State of California declared a Proclamation of a State of Emergency to exist in California on March

4, 2020.  Health Officers from Los Angeles, Riverside, Orange, San Bernardino, Santa Barbara, San Luis Obispo, and Ventura Counties subsequently issued local emergency orders and proclamations related to public gatherings.

(3)  To date, several thousand people within the Central District of California have been confirmed to be infected with COVID-19 and the number of those infected continues to rise, causing an emergency pandemic.

(4)  In their continuing guidance, the Centers for Disease Control and Prevention and other public health authorities have suggested the public avoid social gatherings in groups of more than 10 people and practice physical distancing (within about six feet) between individuals to potentially slow the spread of COVID-19.  The virus is thought to spread mainly from person-to-person contact, and no vaccine currently exists.

(5)  These social distancing guidelines -- which are essential to combatting the virus -- are generally not compatible with holding in-person court hearings.

(6)  On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which authorized the Judicial Conference of the United States to provide authority to Chief District Judges to permit certain criminal proceedings to be conducted by video or telephonic conference.

(7)  Under § 15002(b) of the CARES Act, "if the Judicial Conference of the United States finds that emergency conditions due to the national emergency declared by the President under the National Emergencies Act (50 U.S.C. 1601 et seq.) with respect to the Coronavirus Disease 2019 (COVID-19) will materially affect the

2

functioning of either the Federal courts generally or a particular district court of the United States, the chief judge of a district court . . . specifically finds, upon application of the Attorney General or the designee of the Attorney General, or on motion of the judge or justice, that felony pleas under Rule 11 of the Federal Rules of Criminal Procedure and felony sentencings under Rule 32 of the Federal Rules of Criminal Procedure cannot be conducted in person without seriously jeopardizing public health and safety, and the district judge in a particular case finds for specific reasons that the plea or sentencing in that case cannot be further delayed without serious harm to the interests of justice, the plea or sentencing in that case may be conducted by video teleconference, or by telephone conference if video teleconferencing is not reasonably available."

 (8) On March 29, 2020, the Judicial Conference of the United States made the appropriate findings as required under the CARES Act, finding specifically that "emergency conditions due to the national emergency declared by the President under the National Emergencies Act (50 U.S.C. § 1601, et seq.) with respect to the Coronavirus Disease 2019 (COVID-19) have materially affected and will materially affect the functioning of the federal courts generally."

 (9) On March 29, 2020, the Chief Judge of this District also made the appropriate findings as required under the CARES Act, finding "that felony pleas under Rule 11 of the Federal Rules of Criminal Procedure and felony sentencings under Rule 32 of the Federal Rules of Criminal Procedure cannot be conducted in person without seriously jeopardizing public health and safety. As a result, if judges in individual cases find, for specific reasons, that felony pleas or sentencings in those cases cannot be further

3

1 delayed without serious harm to the interests of justice, judges may,
2 with the consent of the defendant or the juvenile after consultation
3 with counsel, conduct those proceedings by video conference, or by
4 telephonic conference if video conferencing is not reasonably
5 available."
6     (10) Through this order, I now find that the sentencing in this
7 case cannot be further delayed without serious harm to the interests
8 of justice.  My specific reasons are as follows:
9     a.  On March 23, 2020, the Chief Judge of this District
10         activated The Continuity of Operations ("COOP") Plan for
11         the Central District of California.
12     b.  Under the COOP Plan, all of the Courthouses of the
13         Central District of California are closed to the public
14         except for hearings on criminal duty matters.  Hearings
15         by video and telephonic conference may be held by
16         individual Judges in certain criminal matters, but
17         Judges have no discretion to hold in-person hearings.
18     c.  The Court has extended the activation of the COOP Plan
19         through and including June 22, 2020.  C.D. Cal. General
20         Order 20-08, In Re: Coronavirus Public Emergency, Order
21         Concerning Phased Reopening of the Court, at 2 (May 28,
22         2020).  This extension order also sets forth a plan for
23         reopening, which is to occur in three phases.  Phase 1
24         is to begin no earlier than June 1 and contemplates the
25         return of certain staff to the courthouses to prepare
26         for limited in-court hearings.  Phase 2 is to begin no
27         earlier than June 22, 2020 and contemplates reopening
28         courthouses for limited in-court hearings.  The last

|    |    |                                                                              |
|----|----|------------------------------------------------------------------------------|
| 1  |    | phase (Phase 3) contemplates the resumption of jury                          |
| 2  |    | trials, but the date of this phase has not been                              |
| 3  |    | determined.  As a result, no Judge in this District will                     |
| 4  |    | be able to hold any criminal trials or in-person                             |
| 5  |    | hearings in criminal or civil cases until June 23, 2020                      |
| 6  |    | -- at the earliest, when the Court contemplates                              |
| 7  |    | implementing Phase 2 of the reopening plan.  Jury trials                     |
| 8  |    | are unlikely to resume until even later, when the Court                      |
| 9  |    | implements the third and final reopening phase.                              |
| 10 | d. | On April 9, 2020, the Judicial Council of the Ninth                          |
| 11 |    | Circuit declared a judicial emergency in this District                       |
| 12 |    | pursuant to 18 U.S.C. § 3174(d).  The Judicial Council                       |
| 13 |    | declared this emergency because, among other reasons,                        |
| 14 |    | the Central District of California is one of the busiest                     |
| 15 |    | judicial districts in the country.                                           |
| 16 | e. | As described in the report accompanying the Judicial                         |
| 17 |    | Council's declaration, this District currently ranks 3rd                     |
| 18 |    | in the Ninth Circuit and 12th nationally in weighted                         |
| 19 |    | filings, with 692 weighted filings per judgeship for the                     |
| 20 |    | 12-month period ending December 31, 2019.  Considering                       |
| 21 |    | the 10 judicial vacancies, the adjusted weighted filings                     |
| 22 |    | per judge is 1,076.  Overall, the total civil and                            |
| 23 |    | criminal filings in the District reached 16,890 in 2019.                     |
| 24 | f. | Prior to the Judicial Council declaring the judicial                         |
| 25 |    | emergency, the number of criminal cases filed by the                         |
| 26 |    | U.S. Attorney's Office had risen substantially over                          |
| 27 |    | previous totals.  The USAO has represented that the                          |
| 28 |    | number of AUSAs in the Central District is at an all-                        |

|   |   |   |
|---|---|---|
| 1 |   | time high, and that the USAO will soon have |
| 2 |   | approximately 220 AUSAs to prosecute criminal cases. |
| 3 | g. | This District is authorized 27 permanent judgeships, one |
| 4 |   | temporary judgeship, and has 10 vacancies, the oldest of |
| 5 |   | which has remained unfilled since 2014.  All are |
| 6 |   | categorized as judicial emergencies.  There are eight |
| 7 |   | nominees pending, but due to the COVID-19 pandemic the |
| 8 |   | status of confirmation hearing dates remains uncertain. |
| 9 |   | Seven active district judges are eligible to take senior |
| 10 |   | status or retire immediately. |
| 11 | h. | Since 2011, this District has requested anywhere from 8 |
| 12 |   | to 13 additional judgeships.  The District has not |
| 13 |   | received any additional permanent or temporary |
| 14 |   | judgeships since 1990. |
| 15 | i. | As the Judicial Conference concluded, the exceptionally |
| 16 |   | large number of cases pending in this District |
| 17 |   | represents an emergency.  A vacancy on a district court |
| 18 |   | is generally considered an "emergency" if the court's |
| 19 |   | "weighted filings" exceed 600 per judgeship.  The |
| 20 |   | Central District of California's weighted filings, 692 |
| 21 |   | per judgeship (61 percent above the Conference |
| 22 |   | standard), are high enough for each Judge's caseload to |
| 23 |   | be deemed an emergency. |
| 24 | j. | In normal times, these extreme caseloads can interfere |
| 25 |   | with the prompt resolution of cases and administration |
| 26 |   | of justice in this District.  In an October 2019 letter |
| 27 |   | to the White House and Congress, the Chief Judge of this |
| 28 |   | District warned that "[a]s alarming as this is, the |

|     |    |                                                                              |
| --- | -- | ---------------------------------------------------------------------------- |
| 1   |    | situation may well worsen.  Many of the active district                      |
| 2   |    | judges on the Court who are eligible to retire continue                      |
| 3   |    | to serve, despite the ever growing workload.  If all of                      |
| 4   |    | them chose to retire, only eleven active judges would                        |
| 5   |    | remain, putting at grave risk our Court's ability to                         |
| 6   |    | serve the millions of people in the Central District."                      |
| 7   | k. | The ongoing COVID-19 pandemic will only exacerbate these                     |
| 8   |    | serious problems.  As described in an April 9 Bloomberg                      |
| 9   |    | article entitled "Short-Benched U.S. Trial Courts Face                       |
| 10  |    | Post-Pandemic Crisis," districts with high caseloads and                     |
| 11  |    | a large number of judicial vacancies -- such as this                         |
| 12  |    | District -- will be challenged to deal with the huge                         |
| 13  |    | backlog of trials, hearings, sentencings, and other                          |
| 14  |    | matters once normal operations resume.  In an email to                       |
| 15  |    | Bloomberg commenting on this article, the Chief Judge of                     |
| 16  |    | this District agreed that the Central District of                            |
| 17  |    | California will have a "significant backlog of trials"                       |
| 18  |    | when normal operations resume.  She further expressed                        |
| 19  |    | that the Judicial Council's recent declaration was                           |
| 20  |    | "critical for us, given that all ten of our district                         |
| 21  |    | judge vacancies have been declared judicial emergencies,                     |
| 22  |    | and that we have an extremely heavy caseload."                               |
| 23  | l. | Given these facts, it is essential that Judges in this                       |
| 24  |    | District resolve as many matters as possible via video                       |
| 25  |    | teleconference and telephonic hearing while the COOP                         |
| 26  |    | Plan remains in effect.  By holding these hearings now,                      |
| 27  |    | this District will be in a much better position to work                      |
| 28  |    |                                                                              |

through the backlog of criminal and civil matters once in-person hearings resume.

(11) I therefore conclude that the sentencing in this case cannot be further delayed without serious harm to the interests of justice.  If the Court were to delay this hearing until it can be held in-person, it would only add to the enormous backlog of criminal and civil matters facing this Court, and every Judge in this District, when normal operations resume.

(12) In addition, in this specific case, the sentencing cannot be further delayed without serious harm to the interests of justice because prolonging the case unnecessarily would be unfair to the victims and would delay any restitution order.  Moreover, defendant pleaded guilty in this case in June 4 2018, which was over two years from the current date of the proposed sentencing.

(13) The defendant in this case consents to proceed with her sentencing by video teleconference.  Defendant also understands that, under Federal Rules of Criminal Procedure 32 and 43, as well as the Constitution, she may have the right to be physically present at this hearing.  Defendant understands that right and voluntarily agrees to waive it and to proceed remotely by video teleconference.  Counsel joins in this consent, agreement, and waiver.

//
//
//
//
//
//
//

(14) Based on the findings above, and my authority under § 15002(b) of the CARES Act, the sentencing in this case will be conducted by video teleconference on June 29, 2020 at 1:00 p.m., if at the outset of such hearing, defendant makes a knowing and voluntary waiver of her right to an in-person hearing.

IT IS SO ORDERED.

June 25, 2020
DATE

*Christina A. Snyder*
THE HONORABLE CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE

Presented by:

/s/
LUCY B. JENNINGS
Assistant United States Attorney

cc: U.S. Probation and Pretrial Services